COLLOTON, Circuit Judge,
concurring in part and dissenting in part.
The linchpin of the court’s decision to deny qualified immunity to defendant Derek Sanders is that Sanders was required to identify himself as a police officer to plaintiff Mark Atkinson before Sanders used more than de minimis force to seize and arrest Atkinson. From the dramatic portrayal of Sanders as a “stranger” and “unknown man,” ante, at 1205, to the legal conclusion that a reasonable officer would not have “thought it appropriate to charge Atkinson without first identifying himself as a law enforcement official and giving Atkinson a chance to return the cell phone peacefully,” id. at 1210, the court rests its decision on the proposition that the Fourth Amendment required Sanders to identify himself. “By remaining anonymous,” the court reasons, “Sanders never gave Atkinson the opportunity to comply with a legitimate request by a law enforcement official.” Id. Central to the court’s holding is that Sanders’s call for Atkinson to return the cell phone he had taken from Sanders “was not the demand of a peace officer, but the plea of an ‘irate’ civilian.” Id. In denying qualified immunity, the court says that “[o]n August 31, 2007, Sanders had ‘fair warning’ that charging at a non-resisting individual without first identifying himself as a police officer was unconstitutional in the context of an arrest.” Id. at 1212 (emphasis added).
There is a significant problem with the court’s analysis: It was not clearly established in 2007 that the Fourth Amendment required a police officer to identify himself as an officer before using force to carry out an arrest in public, even when self-identification might have obviated the need to use force. Two years after the incident in this case, the Court of Appeals for the Seventh Circuit surveyed the law and determined that “it is far from clearly established that the Fourth Amendment requires police officers to identify themselves in the course of carrying out an arrest in a public place.” Catlin v. City of Wheaton, 574 F.3d 361, 369 (7th Cir.2009) (emphasis added). The Seventh Circuit was “aware of no court of appeals decision that has recognized a constitutional obligation on the part of the police to announce their identity when they carry out an arrest in a public place.” Id. The court found that “the district courts that have considered this issue are, if anything, divided.” Id.; see Sanchez v. City of New York, No. 96-C-7254, 2000 WL 987288, at *5 (S.D.N.Y. July 17, 2000) (observing that the plaintiffs Fourth Amendment claim “assumes *1218 the uncertain proposition that the reasonableness of a seizure outside the home depends on whether the police officer made an announcement or identification at all”). “Even if the defendants had consulted a casebook,” the Seventh Circuit explained, “they still would not have had fair notice that they had a constitutional obligation to announce their identity prior to completing the arrest.” 574 F.3d at 369.
The majority, ante, at 1213 n. 6, declares Catlin inapposite based on an inapposite portion of the opinion. Of course, the Seventh Circuit concluded that the Fourth Amendment did not require police officers to identify themselves when such notice would have allowed a suspect to flee or fight. 574 F.3d at 366. But the court addressed separately whether the officers unreasonably failed to identify themselves when there was no risk of causing flight or resistance, and when they used force against an arrestee who was resisting only because he believed that “he was being attacked by common criminals.” Id. at 368. Even though a jury could have found that self-identification would have caused the arrestee to have “given up without a fight, thus obviating the need for the [officers’] final show of force,” id., the court held that the officers were entitled to qualified immunity against a claim that they used excessive force. Id. at 369. Just as in this case, the court was confronted with an argument that the failure of police officers to identify themselves was relevant to whether the arrestee was resisting arrest or attempting to evade arrest, see Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), but the Seventh Circuit nonetheless held that the use of force by unidentified officers to quell resistance did not violate a clearly established right.
The court cites no authority to undermine the Seventh Circuit’s conclusion. The only case cited in support of the court’s assertion that Sanders had a constitutional duty to identify himself has nothing to do with a police officer’s obligation to declare his official status. See Samuelson v. City of New Ulm, 455 F.3d 871, 877 (8th Cir.2006). When there is a legitimate question about whether a public official’s conduct violates the Fourth Amendment, the official is entitled to qualified immunity. Anderson v. Creighton, 483 U.S. 635, 640-41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). “Officials are not ha-ble for bad guesses in gray areas; they are liable for transgressing bright lines.” Austell v. Sprenger, 690 F.3d 929, 936 (8th Cir.2012) (internal quotation omitted). The central premise of the court’s analysis — that Sanders violated clearly established rights under the Fourth Amendment by using force against Atkinson without first identifying himself as a police officer — is mistaken. Sanders is entitled to qualified immunity.
Aside from the question whether Sanders unreasonably failed to identify himself as an officer, the undisputed facts support the district court’s conclusion that Sanders acted reasonably. Atkinson did not appeal the district court’s ruling that Sanders had probable cause to arrest Atkinson. See R. Doc. 113, at 12 (“It cannot be seriously argued that a police officer, under the circumstances, did not have probable cause to believe that plaintiff had committed a crime and that there were legal grounds to arrest him.”). That there was probable cause for an arrest is thus not an “interpretation of the facts,” ante, at 1210 n. 3; it is the law of the case. Little Earth of the United Tribes, Inc. v. U.S. Dep’t of Hous. and Urban Dev., 807 F.2d 1433, 1437-38 (8th Cir.1986).
There was probable cause to believe that Atkinson committed an assault and stole property when Atkinson, by his own ad *1219 mission, put his hands on Sanders, pushed him back a little, and snatched Sanders’s cell phone as Sanders tried to make a call for help. Sanders asked Atkinson to return the phone, but Atkinson refused to give it back. Atkinson admits that when Sanders called for the return of his phone, Atkinson kept the phone and said, “Why don’t you talk to us? Why can’t you just talk to us?” When Sanders again said, “Give me my phone back,” Atkinson admits that he merely looked down at the phone and said, “You mean this?” A reasonable officer could have interpreted Atkinson’s feigned uncertainty about Sanders’s request as a determined refusal to return the property. It was reasonable for Sanders to arrest Atkinson, and more than de minimis force reasonably was required for an unarmed officer to make the seizure. The court emphasizes the injuries suffered by Atkinson when Sanders “bull rushed” him into a truck, but by Atkinson’s own admission, Sanders “was trying to knock me down to the ground” with “a football move.” It was'after Atkinson, in his words, “kept on side-stepping” that Sanders slid Atkinson into the truck.[12]
Sanders was alone, unarmed, and deprived of means to communicate with his fellow officers in a situation that was rapidly evolving. Even if Atkinson subjectively intended to do “no more than attempt to avoid a fight between Sanders and Taylor,” ante, at 1210, and even if a jury could believe that Atkinson’s refusal to return Sanders’s phone was a genuine effort “to defuse Sanders’ anger through peaceful words,” id. at 1210, those are not the relevant issues. The relevant question under the Fourth Amendment is not what a jury might conclude about Atkinson’s intent with 20/20 hindsight after a full-blown trial, but what a reasonable officer on the scene could perceive at the moment when action was required. Graham, 490 U.S. at 396, 109 S.Ct. 1865. A reasonable officer had probable cause to arrest Atkinson for assault, and reasonable grounds to believe that barehanded force was necessary to secure Atkinson, to retrieve the officer’s property, and to protect the safety of the officer. As the district court cogently explained:
Sanders was responding to a situation that seemed to be escalating rapidly when he used force against [Atkinson]. He used this force only after [Atkinson] had interjected himself into the fray by getting between defendant and Joe Taylor and then physically seizing [Sanders’s] cell phone from him. The incident occurred after a high school football game where emotions typically run high, and the officer was [] outnumbered. His effort to call for assistance was thwarted by [Atkinson], who demonstrated no intention of returning the phone. The reasonableness of the particular force used must be judged from the perspective of a reasonable officer on the scene. Under the circumstances, the Court finds, after careful review, that the amount of force used by defendant Sanders was objectively reasonable and did not amount to a violation of the Fourth Amendment.
The doctrine of qualified immunity requires an exercise of judicial restraint that sometimes can be discomfiting. Even when a court believes that a defendant violated the constitutional rights of a plain *1220 tiff, the court is required to dismiss the plaintiffs claim if the unconstitutionality of the defendant’s conduct was not clearly established. Perhaps this is an appropriate case in which to announce a rule that a police officer must identify himself before using inore than de minimis force to complete an arrest, if it is reasonable to believe that self-identification would obviate the need to use force. See, e.g., Johnson v. Grob, 928 F.Supp. 889, 905 (W.D.Mo.1996). The Seventh Circuit thought that was a “close question” in 2009. Catlin, 574 F.3d at 368. But the rule announced by the court today was not clearly established in 2007, and the putative unlawfulness of Sanders’s action was not apparent under pre-existing law. See Anderson, 483 U.S. at 640, 107 S.Ct. 3034. I would affirm the judgment.

. The court seems to proceed on a misunderstanding of the undisputed facts when it treats Atkinson as an “adult who separates two quarreling children or adolescents tussling over an object and who then confiscates the object until the two calm down.” Ante, at 1210 n. 3. There is no evidence that the cell phone that Atkinson snatched from Sanders had been the object of a tussle.